Pro Se 1 (Rev. 12/16) Complaint for a Civil Case

# UNITED STATES DISTRICT COURT

for the

Middle District of Florida ▾

_____Ocala_____ Division

|  |  |
|---|---|
| Dwyane C. Lymore | ) Case No. 5: 2U-CW-3400C30PRL |
| | ) (to be filled in by the Clerk's Office) |
| | ) |
| _____ | ) |
| Plaintiff(s) | ) |
| *(Write the full name of each plaintiff who is filing this complaint.* | ) Jury Trial: *(check one)* ✓ Yes ☐ No |
| *If the names of all the plaintiffs cannot fit in the space above,* | ) |
| *please write "see attached" in the space and attach an additional* | ) |
| *page with the full list of names.)* | ) |
| -v- | ) |
| Secretary , Department of Veterans Affairs | ) |
| | ) |
| | ) |
| _____ | ) |
| Defendant(s) | ) |
| *(Write the full name of each defendant who is being sued.  If the* | ) |
| *names of all the defendants cannot fit in the space above, please* | ) |
| *write "see attached" in the space and attach an additional page* | ) |
| *with the full list of names.)* | ) |

2020 JUL 27 AM 11: 59   FILED

## COMPLAINT FOR A CIVIL CASE

### I.     The Parties to This Complaint

#### A.     The Plaintiff(s)

Provide the information below for each plaintiff named in the complaint.  Attach additional pages if needed.

| | |
|---|---|
| Name | Dwyane C. Lymore |
| Street Address | PO BOX 832 |
| City and County | Tavares |
| State and Zip Code | FL. 32778 |
| Telephone Number | 352)409-8237 |
| E-mail Address | dwyane.lymore@att.net |

#### B.     The Defendant(s)

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation.  For an individual defendant, include the person's job or title *(if known)*.  Attach additional pages if needed.

Pro Se 1 (Rev. 12/16) Complaint for a Civil Case

Defendant No. 1

| | |
|---|---|
| Name | Timothy Cooke |
| Job or Title *(if known)* | Facility Director or Staff Office Head  (Director 675/00) |
| Street Address | 13800 Veterans Way |
| City and County | Orlando, Orange |
| State and Zip Code | Florida 32827 |
| Telephone Number | |
| E-mail Address *(if known)* | timothy.cooke@va.gov |

Defendant No. 2

| | |
|---|---|
| Name | |
| Job or Title *(if known)* | |
| Street Address | |
| City and County | |
| State and Zip Code | |
| Telephone Number | |
| E-mail Address *(if known)* | |

Defendant No. 3

| | |
|---|---|
| Name | |
| Job or Title *(if known)* | |
| Street Address | |
| City and County | |
| State and Zip Code | |
| Telephone Number | |
| E-mail Address *(if known)* | |

Defendant No. 4

| | |
|---|---|
| Name | |
| Job or Title *(if known)* | |
| Street Address | |
| City and County | |
| State and Zip Code | |
| Telephone Number | |
| E-mail Address *(if known)* | |

## II.   Basis for Jurisdiction

Federal courts are courts of limited jurisdiction (limited power). Generally, only two types of cases can be heard in federal court: cases involving a federal question and cases involving diversity of citizenship of the parties. Under 28 U.S.C. § 1331, a case arising under the United States Constitution or federal laws or treaties is a federal question case. Under 28 U.S.C. § 1332, a case in which a citizen of one State sues a citizen of another State or nation and the amount at stake is more than $75,000 is a diversity of citizenship case. In a diversity of citizenship case, no defendant may be a citizen of the same State as any plaintiff.

What is the basis for federal court jurisdiction? *(check all that apply)*

[✓] Federal question          [ ] Diversity of citizenship

Fill out the paragraphs in this section that apply to this case.

### A.   If the Basis for Jurisdiction Is a Federal Question

List the specific federal statutes, federal treaties, and/or provisions of the United States Constitution that are at issue in this case.
  The Fifth and Fourteenth Amendments

### B.   If the Basis for Jurisdiction Is Diversity of Citizenship

1.   The Plaintiff(s)

    a.   If the plaintiff is an individual

        The plaintiff, *(name)* _____, is a citizen of the State of *(name)* _____.

    b.   If the plaintiff is a corporation

        The plaintiff, *(name)* _____, is incorporated under the laws of the State of *(name)* _____, and has its principal place of business in the State of *(name)* _____.

    *(If more than one plaintiff is named in the complaint, attach an additional page providing the same information for each additional plaintiff.)*

2.   The Defendant(s)

    a.   If the defendant is an individual

        The defendant, *(name)* _____, is a citizen of the State of *(name)* _____. Or is a citizen of *(foreign nation)* _____.

Pro Se 1 (Rev. 12/16) Complaint for a Civil Case

b.    If the defendant is a corporation

The defendant, *(name)* _____ , is incorporated under

the laws of the State of *(name)* _____ , and has its

principal place of business in the State of *(name)* _____ .

Or is incorporated under the laws of *(foreign nation)* _____ ,

and has its principal place of business in *(name)* _____ .

*(If more than one defendant is named in the complaint, attach an additional page providing the same information for each additional defendant.)*

3.    The Amount in Controversy

The amount in controversy–the amount the plaintiff claims the defendant owes or the amount at stake–is more than $75,000, not counting interest and costs of court, because *(explain)*:

---

## III.    Statement of Claim

Write a short and plain statement of the claim. Do not make legal arguments. State as briefly as possible the facts showing that each plaintiff is entitled to the damages or other relief sought. State how each defendant was involved and what each defendant did that caused the plaintiff harm or violated the plaintiff's rights, including the dates and places of that involvement or conduct. If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.

Plaintiff was injured on the job, and despite repeated recommendations from the plaintiff's attending physician for modification of duties, the employer's agent refused to accommodate the plaintiff. The plaintiff worked in great anguish until a second physician placed a restriction on the plaintiff that reduced the plaintiff's workload. The defendant representative refused to find suitable work within the department and refused to allow the plaintiff to return to work until he "no longer required accommodation, no longer needed restrictions, and no longer required light duty. The actions of the defendant left the plaintiff without the ability to meet his financial obligations and soon after the plaintiff became homeless and under great duress.

## IV.    Relief

State briefly and precisely what damages or other relief the plaintiff asks the court to order. Do not make legal arguments. Include any basis for claiming that the wrongs alleged are continuing at the present time. Include the amounts of any actual damages claimed for the acts alleged and the basis for these amounts. Include any punitive or exemplary damages claimed, the amounts, and the reasons you claim you are entitled to actual or punitive money damages.

The plaintiff is asking for exemplary damages/ punitive compensation($300,000), due to the willful negligence of the defendant. the injury incurred in 2015 and up until the final work restriction in 2017 the defendant had been provided with medical documentation which requested modification to work task, and placed limitation on the work the plaintiff should perform. work modification that have been offer to other employees. T

The plaintiff is seeking compensatory damages,($3,000 past due rent, $5,000 dental bills, insurance premiums, thrift savings plan, $15,000 storage cost, $400 loss of gym membership, $10,000 DUI, ) due to the mental anguish, the pain and suffering due to this willful discrimination.

## V.        Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A.        For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case–related papers may be served.  I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing:      July 23, 2020

Signature of Plaintiff

Printed Name of Plaintiff      Dwyane C. Lymore

### B.        For Attorneys

Date of signing:      _____

Signature of Attorney      _____

Printed Name of Attorney      _____

Bar Number      _____

Name of Law Firm      _____

Street Address      _____

State and Zip Code      _____

Telephone Number      _____

E-mail Address      _____

## Timeline of Events

### *On August 4, 2017*

I was assigned a task by Justin Johnson that required me to perform a lot of walking, while performing the task I started to experience pain in my right ankle, with time the pain increased and was shooting from the outside of my right foot until the inside. I reported to Urgent Care and was told not to work until August 6, 2017 at which time I could return with the following restrictions; No weight bearing on my right foot, at that time I notified Mr. Hill via my work email detailing the restriction.

Also on this day I reported to Occupational Health for assistance on how to handle the restrictions, and to the Human Resource office to speak with Deborah True, I was informed by Jim Mannon that Deborah True would not be in and if Mr. Hill had any question to give him a call.

### *On August 7, 2017*

I email Deborah True and told her what I was told by Occupational Health about reopening my claim, in order to receive accommodations. Also on this day Deborah True replied to my email with instruction to fill out the attached recurrence form (CA-2a).

### *On August 8, 2017*

I was notified by Keith Johnson that I should speak with Mr. Hill, and I informed him that I had email Mr. Hill on August 4, 2017 and had not heard anything back from him. I emailed Mr. Hill again on this day and asked him to advise me about what it is I needed to do about the restriction I had been placed on and any changes in my duties.

Also on this day I sent Mr. Hill a copy of the CA-2a form that I had completed, I CC Deborah True and at this time was provided with Mr. Leafgreen information to request Reasonable Accommodations.

### *On August 9, 2017*

I contacted James Leafgreen and proved a brief description about my situation and who referred me to him, James Leafgreen responded to my email and provided me with two forms to completed VA form 0857a, and VA form 0857e.

### *On August 11, 2017*

My immediate supervisor Ramon Ward was at work and he told me that he could not allow me to work, he stated that he needed a profile, I told him I left the Urgent Care restriction on his desk, He stated that he needed something like the CA-17 I normally turn in every month from my physician .Ramon Ward stated I could work, thus honoring my restrictions.

## Timeline of Events

### *On August 12, 2017*

I reported to the EMS office and was told by Ramon that he was going to send me home, because he could not accommodate me, and he needed to speak with Mr. Hill his supervisor and until he had not to return to work.

### *On August 13, 2017*

I received a text message from Ramon Ward that stated that I should report to Mr. Hill's office on Monday morning for my assignment; Ramon stated that he had nothing I could do on third shift.

### *On August 14, 2017*

I meet with Mr. Hill and Ramon Ward, on this date Ramon denied having ever been provided with any CA-17 and Mr. Hill stated he know nothing about any CA-17, Mr. Hill stated that he did not have to provided me with any accommodations' due to the nature to the injury not being approved by the Department of Labor

I requested to have a Union Reprehensive present at which time Harold Robbins was call on the phone, we began to address the concerns and it appeared that Mr. Robbins was disconnected and Mr. Hill stated once again that he did not have to provided me with any accommodations, and that I could not return to work until supervisor Ramon Ward called me.

I told Mr. Hill that I was advised by my attorney to file an EEO complaint.

### *On August 15, 2017*

I received an email from Mr. Hill about the CA-2a from I completed and a recap of his version of the conversation on August 14, 2017

### *On August 17, 2017*

I emailed Mr. Hill about my version of the conversation held on August 14, 2017, and to get a clearer understanding.

I received a reply from Mr. Hill and in it he stated, "You can return to work when you're able to work without limitations/restrictions (light duty)".

Timeline of Events

### *On August 12, 2017*

I reported to the EMS office and was told by Ramon that he was going to send me home, because he could not accommodate me, and he needed to speak with Mr. Hill his supervisor and until he had not to return to work.

### *On August 13, 2017*

I received a text message from Ramon Ward that stated that I should report to Mr. Hill's office on Monday morning for my assignment; Ramon stated that he had nothing I could do on third shift.

### *On August 14, 2017*

I meet with Mr. Hill and Ramon Ward, on this date Ramon denied having ever been provided with any CA-17 and Mr. Hill stated he know nothing about any CA-17, Mr. Hill stated that he did not have to provided me with any accommodations' due to the nature to the injury not being approved by the Department of Labor

I requested to have a Union Reprehensive present at which time Harold Robbins was call on the phone, we began to address the concerns and it appeared that Mr. Robbins was disconnected and Mr. Hill stated once again that he did not have to provided me with any accommodations, and that I could not return to work until supervisor Ramon Ward called me.

I told Mr. Hill that I was advised by my attorney to file an EEO complaint.

### *On August 15, 2017*

I received an email from Mr. Hill about the CA-2a from I completed and a recap of his version of the conversation on August 14, 2017

### *On August 17, 2017*

I emailed Mr. Hill about my version of the conversation held on August 14, 2017, and to get a clearer understanding.

I received a reply from Mr. Hill and in it he stated, "You can return to work when you're able to work without limitations/restrictions (light duty)".

**DEPARTMENT OF VETERANS AFFAIRS**
**OFFICE OF EMPLOYMENT DISCRIMINATION COMPLAINT ADJUDICATION**
**WASHINGTON, D.C. 20420**

**Dwayne Lymore**
　　　　　　　*Complainant,*

　　　　　　　　*v.*　　　　　　　)　**VA Case No.   200I-0675-2017104763**

**Secretary,**　　　　　　　　　　)　**EEOC No. 510-2018-00279X**
**Department of Veterans Affairs**

　　　　　　　　*Agency.*

# FINAL AGENCY DECISION

## INTRODUCTION

In a formal EEO complaint filed November 29, 2017, Complainant alleged that officials at the VA Medical Center in Orlando, Florida discriminated against him as referenced below. The Department's Office of Resolution Management (ORM) accepted and appropriately investigated one of the claims raised in the complaint and properly notified Complainant of its determination to dismiss the remaining claims in accordance with the Commission's regulation governing partial dismissals at 29 C.F.R. Section 1614.107(b).

At the conclusion of the investigation, the Department notified Complainant in writing of the right to request either a hearing and decision by an EEOC administrative judge, with a subsequent final action by the Department, or an immediate final decision by the Department without a hearing.  Complainant requested a hearing before the EEOC on April 18, 2018.

During the EEOC hearing process, the EEOC administrative judge dismissed the Complainant's request for hearing on January 2, 2020.   Complainant's hearing request was dismissed as a sanction for Complainant's failure to respond to Agency discovery. Accordingly, the administrative judge remanded the complaint to the Department's Office of Employment Discrimination Complaint Adjudication (OEDCA) for an immediate final agency decision based on the investigative record.

## PROCEDURAL DISMISSALS

The Complainant raised in his formal complaint a discrimination claim based on disability and reprisal for non-EEO activity (Office of Inspector General (OIG)), involving events in August 2017 specific to reasonable accommodation and workers compensation claims.

*Workers' Compensation Claims*

By letter dated January 5, 2018, ORM dismissed Complainant's claim regarding workers compensation for lack of jurisdiction. For reasons explained below, Complainants workers compensation claims are properly dismissed as a failure to state a claim.

The record indicates that the Complainant had overlapping and related claims, between workers compensation and reasonable accommodation. Here Complainant's claim is regarding a Department of Labor form in order to reopen his workers compensation claim.

The general rule is that claims concerning the processing of claims by the Department of Labor's Office of Worker's Compensation Program (OWCP), including information and letters sent to that office, constitute collateral attacks on the OWCP process and do not state a claim. Corcoran v. Postmaster General, 01A20013 (2002); Gustafson v. Postmaster General, 01A00698 (2001).

Importantly, for a complainant to state a claim before the EEOC regarding a Workers Compensation claim, the complainant must identify a specific omission or action that influenced the OWCP decision. For example, the failure of the agency to submit the required paperwork to OWCP does state a claim. See Williams v. Postmaster General, 01A10999 (2001). See also Complainant v. Postmaster General, 020141683 (2014) (allegation that agency delayed submitting paperwork for continuation of pay stated a claim).

Complainant does not allege that there was any prohibited act on behalf of management as it relates to the processing of his workers compensation claim. In fact, the Complainant admits that management officials provided the documents he requested on the date he requested them. Conspicuously, in his formal complaint, Complainant does not identify any specific omission, or action by management officials regarding his workers compensation claims. Further, Complainant does not allege any disparate treatment as it relates to his workers compensation claims.

Because Complainant fails to identify any specific omission or action on behalf of management that influenced his workers compensation decision, Complainant's claims regarding workers compensation are properly dismissed for failure to state a claim in accordance with 29 CFR  1614.107(a)(1).

2

*Office of Inspector General Reprisal Claims*

ORM dismissed for failure to state a claim Complainant's claimed basis of reprisal for non-EEO activity pertaining to an unspecified Office of Inspector General report.

The Inspector General's (IG) office is an independent unit whose head is appointed by the office of the President. It is separate from the Agency. Because the Commission's regulations cover complaints regarding an Agency's acts of prohibited discrimination and because the IG's Office is separate from the Agency, we find that Complainant's allegations fail to state a claim under the regulations. See Johnson v. Secretary of Navy, 05960699 (1998).

For this reason, the Department's Office of Resolution Management properly dismissed the allegations regarding the IG for failure to state a claim in accordance with 29 CFR 1614.107(a)(1).

Accordingly, for the above stated reasons, it is the final decision of the Department to dismiss the claims relating to workers compensation, and the basis of reprisal for non-EEO activity pertaining to an unspecified Office of Inspector General report.

The merits of the remaining claim raised in the complaint are addressed below.

## CLAIM[1]

Whether the Agency subjected Complainant to discrimination on the basis of disability (physical) when, on August 12 and 14, 2017, they denied his request for reasonable accommodation.

## SUMMARY OF FACTS

Complainant (Disability: Osteochondritis Dissecans of the Talus in both ankles[2]) is a Housekeeping Aide, WG 02/02, at Orlando VAMC, Lake Nona. The Housekeeping Supervisor served as Complainant's immediate supervisor. (Report of Investigation (ROI), Tabs 7-1, 7-2 and 7-4) The Chief of EMS Services served as Complainant's second-line supervisor (S2). (ROI, Tabs 7-2, and 7-5)

Complainant identifies his disabling conditions as permanent. Complainant states he is unable to walk, stand, and climb. Further, Complainant states that these activities are daily requirements of his job. Complainant describes his medical work restrictions as requiring "sedentary work" only. (ROI, Tab 7-2)

---

[1] The Report of Investigation is unclear what occurred with Complainant's employment after the events covered therein.

[2] "Osteochondritis dissecans is a loss of blood supply to a segment of bone and cartilage in the ankle and may result in a small fracture or collapse of the joint surface."
See https://www.orthonorcal.com/osteochondritis-dissecans-of-the-ankle/ (April 20, 2020).

In his capacity as a Housekeeping Aide, Complainant is responsible for performing the full variety of housekeeping tasks required to maintain the Medical Center in an aesthetic and aseptic condition. Complainant's position description describes the "primary duties" in three general categories: Cleaning (i.e., sweeping, dust mopping, wet mopping, polishing, vacuuming, stripping, scrubbing, and refinishing floors); Trash Removal (i.e., Removes up to 50 lbs. of trash, removes infectious medical waste, removes soiled linens from patient rooms); and Equipment Use and Basic Maintenance (i.e., uses hand and industrial type powered equipment, changes brushes, filters, and attachments on equipment, cleans and maintains all assigned equipment). (ROI, Tab 7-12)

Complainant's position description for a Housekeeping Aide includes the physical demands required of the position. The position description states that a housekeeper must be physically able to do continuous walking, standing, stooping, kneeling, bending, pushing, pulling, heavy lifting and moving heavy objects up to 50 pounds and climbing step ladders. The duties require considerable dexterity, hand, foot, and eye coordination and concentration to the tasks being performed. (ROI, Tab 7-12)

Although Complainant's claims regarding OWCP are properly dismissed as noted above, the timeline of Complainant's OWCP case is important to the background of this case. Complainant submitted a Worker's Compensation Claim on January 25, 2016, alleging he was injured on December 30, 2015. The OWCP claim was denied by the Department of Labor on August 25, 2016. Complainant requested a hearing to dispute his OWCP claim, and the hearing occurred on April 19, 2017. The initial denial was affirmed. On August 7, 2017, Complainant requested an OWCP reoccurrence form in an attempt to reopen his case. Complainant filed an OWCP illness claim on October 4, 2017 for the alleged illness beginning on December 30, 2015. On October 31, 2017, Department of Labor informed the Complainant by letter that the reoccurrence form could not be considered as the Complainant's previous claim was denied. Department of Labor denied Complainant's illness claim on December 5, 2017. (ROI, Tab 7-6)

The record indicates that Complainant was on "light duty" from January 2016 to April 2017. It is unclear what Complainant's status was from April 2017 until August 2017. (ROI, Tabs 7-6, 7-9)

The record reflects that Complainant did not report to work for his Housekeeping Aide position on August 12, 2017, and was Family Medical Leave Act (FMLA) leave from August 2017 until at least November 1, 2017. (ROI, Tabs 7-2, 7-7 page 161.)

Complainant and S2 met in S2's office on August 14, 2017. S2 recommended that Complainant move forward with requesting FMLA, and S2 provided Complainant with the information to file a Reasonable Accommodation request. (ROI, Tab 7-5)

On August 14, 2017, Complainant provided the Local Reasonable Accommodations Coordinator (LRAC) with a written request for reasonable accommodation. On the request form, Complainant indicated that his recent medical restrictions required he not

bear any weight on his right foot, and he cannot stand or walk. The Complainant requested a motorized scooter. (ROI, Tab 7-9)

On September 22, 2017, Complainant provided LRAC with medical documentation verifying that he is not to walk greater than 100 yards, cannot stand more than two hours, requires frequent breaks, and that Complainant needs his cane at work. The same documentation identifies Complainant's condition as permanent, and severe enough to impair walking and standing. (ROI, Tab 7-9)

On November 1, 2017, the Complainant and LRAC participated in an interactive meeting. Additionally, Complainant relayed that his leave under the Family Medical Leave Act (FMLA) was running out. (ROI Tab 7-10)

During the November 1, 2017 meeting, the Complainant explained that he used a wheelchair most of the time and a cane the rest of the time. Further, Complainant agreed that he is unable to perform the essential functions of a Housekeeping Aide. Complainant also confirmed that his condition is permanent. LRAC explained to the Complainant the process of a reassignment under reasonable accommodation. Further, LRAC explained that the job search would be limited to WG-2 positions (Complainant's grade) or lower. LRAC further explained that the VAMC did not have any positions other than housekeeping aides at WG-2 or lower. (ROI, Tab 7-10)

Based on this interactive meeting, LRAC determined that Complainant could not be accommodated in his current position. Complainant declined to look for jobs outside of the immediate medical center. As noted above, the VAMC did not have any positions other than housekeeping aides at WG-2 or lower. Complainant was informed of the lack of vacant funded positions for which he qualified on November 1, 2017. (ROI, Tab 7-7, 7-10)

No accommodation was provided to the Complainant. LRAC testified that "Complainant's request was not denied. Complainant is unable to meet the physical requirements of the position and there is no effective accommodation available." (ROI, Tab 7-7, Page 134)

Believing he had been subjected to discrimination on the basis of disability, Complainant contacted an EEO Counselor on August 21, 2017. When informal counseling failed to resolve the matter, Complainant filed a formal complaint on November 29, 2017. (ROI, Tab 2-1)

## ANALYSIS

### 1. Statement of Applicable Law

The law prohibiting employment discrimination based on disability is the Rehabilitation Act of 1973, as amended, 29 U.S.C. 706; 791 et seq. ("the Rehabilitation Act"). In pertinent part, the Rehabilitation Act requires employers to reasonably accommodate the

known limitations of a qualified individual with a disability, unless the agency can show that the accommodation would cause an undue hardship.

Federal sector equal employment opportunity regulations are set out in 29 C.F.R. Part 1614.

<u>Disability – Reasonable Accommodation</u>

Under the Rehabilitation Act, an Agency is required to reasonably accommodate the known limitations of a qualified individual with a disability ("QUID"), unless the Agency can show that the accommodation would cause an undue hardship. See <u>Mui P. v. Dep't of Agriculture</u>, EEOC Appeal No. 0120152712 (January 26, 2017); 29 C.F.R. Part 1630.2(o), (p).

Reasonable accommodations may include: making existing facilities used by employees readily accessible to and usable by individuals with disabilities; job restructuring; modified work schedules; acquisition or modification of equipment or devices; appropriate adjustment or modification of examinations, training materials, or policies; the provision of qualified readers or interpreters; and other similar accommodations for individuals with disabilities. <u>See</u> 29 C.F.R. Part 1630.2(o)(2).

To establish a *prima facie* failure to accommodate claim under the Rehabilitation Act, the complainant must show that: (1) he/she is "disabled" within the meaning of the Rehabilitation Act[3]; (2) he/she was qualified for the position held or desired; (3) the Agency was or should reasonably have been aware that the complainant was disabled and an accommodation was needed; and, (4) the Agency failed to provide a reasonable accommodation. <u>Elly C. v. Dep't of Defense</u>, EEOC Appeal No. 0120161750 (March 14, 2018); <u>EEOC Enforcement Guidance on Reasonable Accommodation and Undue Hardship Under the Americans with Disabilities Act</u>, No. 915.002 (Oct. 17, 2002) ("Enforcement Guidance on Reasonable Accommodation").

An individual with a disability is "qualified" if he/she satisfies the requisite skill, experience, education, and other job-related requirements of the employment position that the individual holds or desires and, with or without reasonable accommodation, and can perform the "essential functions" of such position.   <u>Mui P.</u>, EEOC Appeal No. 0120152712, <u>citing</u> 29 C.F.R. Part 1630.2(m).  "Essential functions" are the fundamental job duties of the position that the individual holds or desires. <u>Id.</u>, <u>citing</u> 29 C.F.R. Part 1630.2(n).

Once a *prima facie* failure to accommodate claim is established, the burden shifts to the Agency to prove, depending on the circumstances, one or more of the following defenses: (1) no reasonable accommodation of the complainant's disability was possible; (2)

---

[3] Subject to certain exceptions, the term disability is defined under the Rehabilitation Act as "a physical or mental impairment that substantially limits one or more of the major life activities of the individual; a record of such an impairment; or being regarded as having such an impairment." <u>See</u> 29 C.F.R. § 1630.2(g).

reasonable accommodation of the disability would pose an undue hardship on the employer's operation; or (3) the disability poses a "direct threat" to the health or safety of the complainant or others, and there is no reasonable accommodation that would either eliminate the threat or reduce it to an acceptable level. See Prewitt v. U.S. Postal Service, 662 F.2d 292 (5th Cir. 1981); see also 29 C.F.R. Part 1630.2(r) (discussing "direct threat" claims); 29 C.F.R. Part 1630 (Appendix, § 1630.2(p)) (discussing the concept of "undue hardship").

## 2. Discussion

The accepted claim is whether the Agency violated the Rehabilitation Act when, on August 12 and August 14, 2017, management denied Complainant's request for reasonable accommodation.  Review of the record reflects that Complainant and the LRAC were engaged in the interactive process from August 14, 2017 to November 1, 2017.  The record reflects that during this period Complainant was accommodated via liberal leave, and Complainant exercised his FMLA benefit for a portion of the time.  On November 1, 2017, during a meeting, the LRAC informed Complainant that reassignment to a suitable position was the only viable accommodation, and that the facility had no vacant funded positions available for which Complainant qualified.

Under the Commission's regulations, an agency is required to reasonably accommodate the known limitations of a "qualified individual with a disability," unless the agency can show that the accommodation would cause an undue hardship.  See 29 C.F.R. 1630.2 (o) and (p).

Thus, in order to prevail on his failure to accommodate claim, Complainant bears the initial burden of demonstrating that he is a "qualified individual with a disability."

Under the Rehabilitation Act, an individual with a disability is one who (i) has a physical or mental impairment which substantially limits one or more major life activities, (ii) has a record of such an impairment; or, (iii) is regarded as having such an impairment. See 29 C.F.R. § 1630.2(g).

In this case, it is uncontested that Complainant is an individual with a disability with respect to his ankle injuries.

Regarding whether Complainant is "qualified" under the law, we must determine if the Complainant can perform the essential functions of any available job, with or without accommodation.  Gilberto S. v. Homeland Security, EEOC Petition No. 0320110053 (Jul. 10, 2014).

Essential functions "are the duties of a job," that is, "the outcomes that must be achieved by someone in that position." Petitioner v. Dep't of Homeland Sec., EEOC Petition No. 0320110053 (July 10, 2014); Ta v. U.S. Postal Serv., EEOC Appeal No. 0120080613 (Dec. 23, 2013); Finnegan v. Dep't of the Air Force, EEOC Request No. 05980065 (Sept. 26, 2001).

The record contains verifying medical documentation from Complainant's treating physician indicating that he was "permanently" unable to: walk greater than 100 yards, cannot stand more than two hours, requires frequent breaks, and that Complainant needs his cane at work.

Considering Complainant's documented physical restrictions in light of the actual physical requirements of his housekeeping position, we concur with management's determination that Complainant was physically unable to perform essential job duties even with modifications.  Complainant could not produce the outcomes that must be achieved by someone in the position of a Housekeeping Aide.  See Petitioner v. Dep't of Homeland Sec. supra.

Thus, based on the requirements of the position, and Complainant's physical limitations, we find that Complainant could not perform the essential requirements of his position. See Graham-Triplett v. U.S. Postal Serv., EEOC Appeal No. 01A44720 (Feb. 24, 2006).

Further, although Complainant indicates that the Agency could have accommodated him by granting him sedentary work, we emphasize that an agency is not required to remove any of the essential functions of a position as a reasonable accommodation.  See EEOC Enforcement Guidance on Reasonable Accommodation and Undue Hardship Under the Americans With Disabilities Act, Notice No. 915.002 (rev. Oct. 17, 2002).

Finally, when an individual with a disability cannot be accommodated in his or her current position, an agency is required to consider the availability of reassignment as an accommodation.  See EEOC Guidance, supra.

Here, the record shows that after determining that Complainant could not be accommodated in his current position, the LRAC initiated a search for vacant, funded positions that were commensurate with Complainant's medical restrictions and skills. Complainant required the search be within the local VAMC.  No vacant, funded positions at WG-2 or below, that were commensurate with Complainant's medical restrictions, were available.  LRAC testified that the only positions that existed at WG-2 within the VAMC were housekeeping aides.  (ROI, Tab 7-7)

Complainant has an evidentiary burden in reassignment cases to show that, more likely than not, there were vacancies during the relevant time period into which he could have been assigned. See Hampton v. U.S. Postal Serv., EEOC Appeal No. 01986308 (Aug. 1, 2002). Absent evidence of a particular vacant, funded position, evidence that a vacant, funded position existed may be inferred based on the documentary or testimonial evidence regarding, inter alia: (1) Complainant's qualifications; (2) the size of the Agency's workforce; and (3) indicia of postings and or selections during the pertinent time period within classes of jobs for which Complainant would have been qualified. See Barnard v. U.S. Postal Serv., EEOC Appeal No. 07A10002 (Aug. 2, 2002).

The record before us does not establish that, more likely than not, there was a vacant, funded position, for which he was qualified and to which he could have been reassigned. Accordingly, we find that the Agency met its obligation of considering reassignment as a reasonable accommodation.  Roberts, v. Department of the Navy., EEOC Appeal No. 0120100738 (March 22, 2012).

Based on the foregoing, we find that Complainant has failed to demonstrate that the Agency violated its obligations under the Rehabilitation Act.

## CONCLUSION

For the foregoing reasons, we find that Complainant has failed to prove that he was subjected to discrimination as alleged.

## RIGHT OF APPEAL

Within 30 days of receipt of this final decision, Complainant has the right to appeal it to: **Equal Employment Opportunity Commission, Office of Federal Operations, P.O. Box 77960, Washington, D.C. 20013**.  If an appeal is filed, EEOC Form 573 should be used.  A copy of EEOC Form 573 is attached.

A copy of the appeal to the EEOC **must** also be sent to the VA Office of General Counsel at the following address:  **Department of Veterans Affairs, Office of the General Counsel (024), 810 Vermont Ave., N.W., Washington, D.C. 20420**.

Statements or briefs in support of the appeal **must** be submitted to the EEOC within 30 calendar days of the filing of the appeal.  A copy of any such statement or brief, including any statements made on EEOC's "Appellant Docketing Statement", must also be sent to the VA's Office of General Counsel at the above address.

If an appeal is filed with the EEOC, the appeal, and any subsequently filed statement or brief, **must** contain a statement certifying the date and method by which copies of these documents were served on the VA's Office of General Counsel.

If Complainant files an appeal with the Commission beyond the above-noted time limit, Complainant should provide the Commission with an explanation as to why the appeal should be accepted despite its untimeliness.  If Complainant cannot explain why timeliness should be excused, the Commission may dismiss the appeal as untimely.

## RIGHT TO FILE A CIVIL ACTION

Complainant also has the right to file a civil action in an appropriate United States District Court.  Complainant may file a civil action

within 90 days of receipt of this final decision <u>if no appeal to EEOC has been filed</u>; or

within 90 days after receipt of the EEOC's final decision on appeal; or

after 180 days from the date of filing an appeal with the EEOC if there has been no final decision by the Commission.

Complainant **must** name the person who is the official head of the Department of Veterans Affairs as the defendant.  Department means the national organization, and not just the local office, facility, or unit in which Complainant works.  Complainant may not name just the Department.  Complainant must name **Robert L. Wilkie** as the defendant. Complainant must also state the official title of the Department head.  The official title of the head of the Department of Veterans Affairs is **Secretary of Veterans Affairs**.  Failure to provide the name or official title of the head of the Department may result in dismissal of the case.

If Complainant decides to file a civil action under Title VII (discrimination due to race, color, religion, sex, national origin, or reprisal) or under the Rehabilitation Act of 1973, as amended, (discrimination due to disability), and if Complainant does not have or cannot afford the services of an attorney, Complainant may request that the Court appoint an attorney to represent Complainant and that the Court permit Complainant to file the action without payment of fees, costs, or other security.  **The grant or denial of the request is within the sole discretion of the Court.**  Filing a request for an attorney does not extend the time in which to file a civil action.  Both the request and the civil action <u>MUST BE FILED WITHIN NINETY (90) CALENDAR DAYS</u> of the date Complainant receives the final decision from the Department or the Commission.

# Maxanne R Witkin 130554

Digitally signed by Maxanne R Witkin 130554
Date: 2020.04.24 08:52:21 -04'00'

MAXANNE R. WITKIN
Director, Office of
Employment Discrimination
Complaint Adjudication

Date

Attachment:  EEOC Form 573

**DEPARTMENT OF VETERANS AFFAIRS**
**OFFICE OF EMPLOYMENT DISCRIMINATION COMPLAINT ADJUDICATION**
**WASHINGTON, D.C. 20420**

**CERTIFICATION OF SERVICE**

Complainant's Name:          Dwayne Lymore
Agency Case No(s):           200I-0675-2017104763
EEOC No(s) (if applicable):   510-2018-00279X

I certify that on this date, the above Final Agency Decision (FAD) was sent via email to the parties below.  For timeliness purposes, it shall be presumed that the parties received the above FAD within five (5) calendar days after the date it was sent via email.

**Complainant:**

Dwyane Lymore
dwyane.lymore@att.net

**Facility Director or Staff Office Head:**

Director (675/00)
Department of Veterans Affairs
Orlando VA Medical Center

timothy.cooke@va.gov

**ORM Field Office:**

Department of Veterans Affairs
Office of Resolution Management (08J)

ORMSEDCORRESPONDENCE@va.gov

**<u>VA Regional Counsel's Office</u>:**

Department of Veterans Affairs
Office of General Counsel (02)

Luis.ortiz-cruz@va.gov

# Marcella E Callender 942514

Digitally signed by Marcella E
Callender 942514
Date: 2020.04.24 10:25:52 -04'00'

_____          _____

Signature of Dispatcher                               Dispatch Date

**DEPARTMENT OF VETERANS AFFAIRS**
**OFFICE OF EMPLOYMENT DISCRIMINATION COMPLAINT ADJUDICATION**
**WASHINGTON, D.C. 20420**


**TRANSMITTAL OF FINAL AGENCY DECISION**


**TO:**     The Parties
Representatives of the Parties (if applicable)
ORM Field Office
EEOC Administrative Judge (if applicable)

**SUBJ:**   Final Agency Decision

Complainant:      Dwayne Lymore
Agency No(s).:    200I-0675-201704763
EEOC No(s):      510-2018-00279X


Enclosed is the Department's Final Agency Decision concerning the above-referenced complaint(s) of employment discrimination.

The Final Decision includes a statement explaining Complainant's right of appeal and right to file a civil action.

The transmittal to Complainant and, if applicable, Complainant's representative, includes EEOC Form 573 (MSPB Form 185, if the subject complaint is a "mixed case") for use should Complainant wish to appeal the enclosed Final Decision.

If Complainant requested a hearing before an EEOC administrative judge, the transmittal to the ORM field office also encloses the hearing record, including the EEOC administrative judge's decision, and/or other miscellaneous correspondence/documents provided to this office by the judge.

# Maxanne R Witkin 130554

Digitally signed by Maxanne R Witkin 130554
Date: 2020.04.24 08:52:44 -04'00'

Maxanne R. Witkin
Director


Enclosure(s)



34475

1023

CERTIFIED MAIL®

7019 2970 0000 6630 2958

Dupont C. Lymore
P.O. Box 882
Ypmres, Fl 32744

U.S. D. C. (Rm 337)
207 N. W. 2nd st.
Ocala, FL 34475
RECEIVED By USMS